UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NANCY A. DIPPOLD,

                      Plaintiff,

v.                                                            1:16-CV-0572
                                                                  (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

OFFICE OF PETER MARGOLIUS         PETER MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.          MONIKA CRAWFORD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 12.).

      Currently before the Court, in this Social Security action filed by Nancy Dippold ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, it is ordered that Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1960. (T. 64.) She completed high school. (T. 144.) Generally, Plaintiff's alleged disability consists of neck impairment, back impairment, knee impairment, hearing loss, and carpal tunnel syndrome. (T. 143.) Her alleged disability onset date is July 1, 1997. (T. 64.) Her date last insured is June 30, 2002. (*Id.*) She previously worked as a printer. (T. 145.)

### B. Procedural History

On April 30, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 70.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 16, 2014, Plaintiff appeared before the ALJ, Dale Black-Pennington. (T. 30-63.) On November 24, 2014, ALJ Black-Pennington issued a partially favorable decision. (T. 11-29.) On March 22, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law. (T. 17-24.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2002 and Plaintiff had not engaged in substantial gainful

activity since July 1, 1997, her alleged onset date. (T. 17.) Second, the ALJ found that since the alleged onset date Plaintiff had the severe impairments of chronic knee problems status post multiple surgical procedures, lumbar spondylosis, cervical stenosis, carpal tunnel syndrome, and sensorineural hearing loss. (*Id.*) Third, the ALJ found that since her alleged onset date Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 18-19.) Fourth, the ALJ found that prior to September 16, 2014, the date Plaintiff became disabled, Plaintiff had the residual functional capacity ("RFC") to perform: light work[1]; except, Plaintiff could stand and walk for up to two hour intervals for six hours during the course of an eight hour workday; could occasionally climb stairs and ramps; must avoid climbing ladders, ropes, and scaffolds; and required a moderate to low noise work environment. (T. 19.) Fifth, the ALJ determined that beginning on September 16, 2014, Plaintiff had the RFC to perform: sedentary work[2]; except, she could stand and walk in 20 minute intervals up to less than two hours during the course of an eight hour workday; could sit for up to one hour intervals for a total of less than six hours during an eight hour workday; could push and pull occasionally; must avoid

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

climbing ropes, ladders and scaffolds; could climb stairs or ramps rarely; and required a low noise work environment. (T. 21.) Sixth, the ALJ determined that since July 1, 1997, Plaintiff was incapable of performing her past relevant work. (T. 22.) The ALJ determined that prior to September 16, 2014, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*) The ALJ determined that beginning September 16, 2014, there were no jobs in the national economy that Plaintiff could perform. (T. 23.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ's RFC determination, that prior to September 16, 2014, Plaintiff could perform light work with limitations, is not supported by substantial evidence in the record. (Dkt. No. 9 at 4-5 [Pl.'s Mem. of Law].)

### B.  Defendant's Arguments

In response, Defendant makes one argument. Defendant argues substantial evidence supports the ALJ's RFC determination. (Dkt. No. 10 at 5-9 [Def.'s Mem. of Law].)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B. **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.   ANALYSIS**

Plaintiff's RFC is "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The ALJ relied on the medical opinion of Plaintiff's treating orthopedist, Richard Moscowitz, M.D., in formulating her RFC determination, that prior to September 16, 2014, Plaintiff retained the ability to perform light work with additional limitations. (T. 19.) The ALJ also relied on treatment notations from Michael Carroll, M.D. and R.W. Jackson, M.D. (*Id.*)

The ALJ determined that Plaintiff was not disabled prior to September 16, 2014, and therefore, Plaintiff was not entitled to SSD benefits because she did not establish a disability on or prior to her date last insured of June 30, 2002. (T. 15); see 20 C.F.R. § 404.131. Plaintiff essentially argues that evidence in the record supports a determination that Plaintiff was disabled prior to her date last insured and thus entitled to SSD benefits. (Dkt. No. 9 at 5 [Pl.'s Mem. of Law].)

On December 27, 1999, two weeks post knee surgery, Dr. Moscowitz noted that tracking of the patella appeared to be "excellent," there was no swelling, and he urged Plaintiff to do "fairly aggressive" leg extensions with weights. (T. 234.) Dr. Moscowitz opined that Plaintiff could return to "light duty work;" however, she should avoid ladder climbing and walking more than two hours without breaks. (Id.)

On February 21, 2000, Dr. Moscowitz noted that although Plaintiff had two episodes where the knee felt like it was almost about to give way, it in fact did not. (T. 234.) He encouraged Plaintiff to continue her exercises. (Id.) Dr. Moscowitz noted in April of 2000, that Plaintiff was doing "reasonably well," she did not experience recurrent episodes of subluxation, and she was only using her brace for "vigorous" occasions. (T. 231.) He noted that she would only need to return if further problems developed. (Id.)

Orthopedist Richard Alfred, M.D., examined Plaintiff in July of 2001 and noted that Plaintiff dislocated her patella in June of 2001. (T. 233.) Dr. Alfred observed on examination that Plaintiff's range of motion was "fairly well maintained," there was crepitus, and Plaintiff had "quite a bit" of patella sensitivity and apprehension. (Id.) Dr. Alfred opined that surgical treatment was not recommended. (Id.) Dr. Alfred supplied

Plaintiff with a new brace. (*Id.*) He further referred Plaintiff to another orthopedist, John Fulkerson for a "final opinion." (*Id.*)

On December 20, 2001, Dr. Fulkerson examined Plaintiff. (T. 220-221.) Plaintiff informed Dr. Fulkerson that she could not participate with physical activity without instability in her kneecap. (T. 220.) Dr. Fulkerson conducted a physical exam of Plaintiff's knee and recommended a brace. (*Id.*) Plaintiff noted "some" range of motion and tracking improvement with the brace. (T. 221.) The doctor also recommended strengthening exercises and anti-inflammatory medication. (*Id.*)

Plaintiff returned to Dr. Moscowitz in April of 2002 complaining of hip pain, which Dr. Moscowitz indicated was the "trochanteric area[3]" of her right leg. (T. 230.) Plaintiff made no mention of knee pain. (*Id.*)

Dr. Moscowitz continued to treat Plaintiff after her date last insured of June 30, 2002. In May of 2003, Plaintiff indicated she had an episode of subluxation that seemed to alleviate itself, but her back pain bothered her "more than anything." (*Id.*) Notations indicated that her left knee was "holding up as long as she [wore] the brace." (*Id.*) In June of 2003, Plaintiff presented with acute subluxation of her right patella. (T. 299.) Dr. Moscowitz recommended a brace for her right knee. (*Id.*) In July of 2003, Dr. Moscowitz indicated that Plaintiff's knee was "holding its own" with the brace and recommended "conservative" treatment. (T. 228.) Plaintiff was not seen again until April 30, 2004. (T. 228.) Plaintiff stated that she had two episodes of subluxation, but was generally not wearing her brace. (*Id.*) Dr. Moscowitz encouraged her to do exercises and to wear her brace. (*Id.*)

---

[3] The trochanter area of the leg is located at the outside point of the hip. https://my.clevelandclinic.org/health/articles/trochanteric-bursitis, last visited April 28, 2017.

Plaintiff argues that notations in the record support greater functional limitations than the ALJ imposed in her RFC determination. (Dkt. No. 9 at 4-5 [Pl.'s Mem. of Law].) Specifically, Plaintiff relies on Dr. Alfred's July 19, 2001 exam which revealed crepitus and sensitivity; Dr. Fulkerson's December 2001 notation; Dr. Moscowitz's April 2002 notation indicating pain; an April 2002 notation from physical therapy noting muscle atrophy; and a 2013 medical source statement from Plaintiff's chiropractor. (*Id.*)

For the reasons stated herein, the ALJ's RFC regarding the time period prior to September 16, 2014, is supported by substantial evidence and therefore must be upheld. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff fails show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.

First, although Dr. Alfred noted on exam that Plaintiff had crepitus and sensitivity, Plaintiff nonetheless had well maintained range of motion in her knee and no ligamentous instability. (T. 233.) Dr. Alfred indicated that surgery was not recommended and provided Plaintiff with a knee brace. (*Id.*) Dr. Alfred provided no functional limitations. (*Id.*) Second, Plaintiff misreads Dr. Fulkerson's notations. Dr. Fulkerson did not opine that Plaintiff was unable to participate in physical activity, he

9

merely noted Plaintiff's complaint that she was unable to do so.  (T. 220.)  In addition, Dr. Fulkerson's physical exam noted no tenderness to palpation, her varus/valgus stresses were normal, she had negative Lachman and McMurray signs, her calves were soft, and her distal neurovascular examination was normal.  (*Id.*)  Dr. Fulkerson recommended conservative treatment such as a knee brace and strength training exercises.  (T. 221.)  Third, a physical therapist noted significant atrophy of Plaintiff's left quadricep in April of 2002.  (T. 222.)  However, no functional limitations were imposed on Plaintiff at that time.  (*Id.*)  Further, the medical record is essentially silent until the summer of 2003 during which time Plaintiff complained of back and knee pain, but continued to receive conservative treatment including a knee brace and strength training exercises.  (T. 230, 229, 228.)

Plaintiff also contends that the medical opinion of Laura Barkner, D.C., supported greater limitations than imposed by the ALJ.  (Dkt. No. 9 at 5 [Pl.'s Mem. of Law].)  Plaintiff argues that because the ALJ relied on Dr. Barkner's opinion to formulate her post September 16, 2014 RFC determination, that the chiropractor's opinion should apply to the RFC determination prior to September 16, 2014.  (*Id.*)  Plaintiff's argument is without merit.  Although Dr. Barkner indicated in her June 2013 medical source statement that she began treating Plaintiff in December of 2001, there is no indication from the statement that the limitations she provided therein were retroactive.  (T. 298-302.)

Although Plaintiff disagrees with the ALJ's weighing of the evidence and argues that evidence in the record supports her position, she fails to show that no reasonable factfinder could have reached the ALJ's conclusion based on the evidence in the record.

The ALJ's RFC determination, that prior to September 16, 2014, Plaintiff could perform light work with additional limitations, is supported by substantial evidence in the record. Namely, the ALJ relied on the medical opinion of Dr. Moscowitz that Plaintiff could perform light duty work, but had to avoid climbing ladders and walking greater than two hours without breaks. (T. 234.) The ALJ's RFC is further supported by medical treatment notations in the record, from Drs. Alfred and Fulkerson, as outlined herein. Therefore, substantial evidence in the record supports the ALJ's determination that prior to September 16, 2014, specifically prior to Plaintiff's date last insured, Plaintiff retained the RFC to perform light work with additional limitations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's partially favorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 9, 2017

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge